## [No. 3431.]

### THOMAS ALLEN v. THE STATE.

1. RAPE — INDICTMENT — EVIDENCE.— It is not a felony under the Penal Code of this State to enter by force or breaking the house of another at night, without his consent. Such an entry, to be felonious, must be made with the intent to commit a felony or the crime of theft. The indictment must not only allege the entry, but must set forth the elements of the offense intended by the accused. And to warrant a conviction the evidence must prove, beyond a reasonable doubt, the entry as alleged, and also the identical intent imputed to the accused by the allegations of the indictment. Proof of the intent specifically alleged cannot be supplied by speculation nor by presumption, but must develop facts of such a nature as to prove that intent beyond a reasonable doubt. See the opinion *in extenso* for the application of these rules to the inconclusive evidence adduced by the State to prove the specific intent to rape, as alleged in the indictment in this case.

2. FACT CASE.— See evidence *held* insufficient to sustain a conviction for burglary with intent to commit rape.

APPEAL from the District Court of Shelby. Tried below before the Hon. J. G. Hazlewood.

The opinion of the court sets out all the material testimony of the two principal witnesses for the State, and all of the evidence

having any relevancy to the ruling in the case. Two or three other witnesses testified for the State, but their evidence was of little consequence in any respect, and tended in no degree to prove the intent with which the entry of the house was made.

A term of three years in the penitentiary was the punishment awarded appellant by the jury.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. This is a conviction for burglary, with the intent to rape Eliza Ross. The indictment charges that the defendant, in the night-time, did break and enter the house of John B. Ross with force, with intent to rape Eliza Ross, by force and threats, and against her consent to ravish and carnally know her.

The facts bearing upon the intent with which the defendant entered the house are as follows: John B. Ross testified that his two daughters, one nineteen years old, and Eliza, the alleged injured party, seventeen years old, occupied together and slept in the same room of his house. The witness was awakened by Eliza running into his room, about 10 o'clock on the night of February 10, 1885, exclaiming that there was a man in her room. When Eliza came into the witness's room, she told the witness that the man she saw in her room was the defendant, and that she fully recognized him from his form and walk. The witness had the defendant in his employ for fifteen or twenty days prior to the occurrence, but had discharged him four or five days before. During his service at witness's house he slept in the dining room. He was perfectly familiar with the interior of the room occupied by Eliza and her sister, and had every opportunity to know that the room contained some $60 or $70 worth of jewelry.

Miss Eliza Ross testified as follows: . . . "He, the defendant, worked at our house about fifteen or twenty days, painting. He quit work about five days prior to the 10th of February, 1885. At the time he slept in the dining room, on a lounge. On the night of the 10th of February, 1885, I was awakened by some one unbolting my door. I closed and bolted my door when I went to bed. When my door was opened, I saw a man in my room. I raised up in my bed and asked the man who he was. He made no reply. I asked him a second time who he was and what he wanted, but he made no reply, but advanced toward me about two steps, which brought him about to the foot of my bed. I asked him three or four times what

he wanted and who he was, and he at no time made reply.   I told him finally that I would call papa.   When I said this, he stepped around behind the head-board of the bed.   I asked him twice who he was, while he was behind the bed.   He then walked out at the door in his bare feet.   I recognized his form and knew his walk. The window curtains were turned back and the moon was shining in at the window.   I recognized him, as he walked out at the door, by his walk and his form.   I could not recognize his countenance. My sister was sleeping with me."

To enter the house of another without his consent at night with force or by breaking is not a felony in this State.   To make such entry a felony it must be made with certain intents; that is, to commit a felony or theft.   And an indictment, to be sufficient, must not only allege such entry, but must set forth the elements of the intended offense.   And again, to sustain the burglary and convict for the burglary, not only the entry, as alleged, but that the defendant entered such house for the purpose and with the intent to commit the felony or theft, as alleged in the indictment, must be proven.

In this case the intended felony, as charged by the indictment, was to rape the said Eliza Ross, and for entering the house with this intent the jury found the defendant guilty.   Now, we would most seriously ask, is there the slightest circumstance in this record tending to show for what purpose or with what intent defendant entered the house?   Was it to rape Eliza Ross?   This must be proven beyond a reasonable doubt.   Or was it to rape her sister, who was sleeping in the same bed in which Eliza slept?   Who can answer this question from this record?   Suppose, instead of Eliza, her elder sister had awakened, and all that transpired between Eliza and the defendant had occurred between her and defendant, and the indictment had charged the intent to rape the elder sister, if the verdict in this case is sustained by the evidence, would not a conviction for an intended rape upon the elder sister be also sustained? Does the fact that Eliza awoke instead of her sister, and endeavored to induce defendant to tell his name and state his business, prove that she instead of her sister was the intended victim?

Again: suppose that both sisters had aroused from their slumbers at the same time, and that both had propounded the same questions or made the same remarks to defendant, would these facts show which or that both were intended to be ravished?   Now it must be borne in mind that all the facts which have the slightest tendency, if any, to enlighten us upon the intent of defendant occurred in the room in which the young ladies were sleeping.   This

intent must be gathered in this case from what occurred in the room, and from no other source. The verdict in this case is that he entered the house with intent to rape Eliza Ross. Why not that he entered with intent to rape the elder sister?

Is this verdict sustained by the evidence? If so, what evidence? That the defendant entered the house by force at night may be true, but that it was for the purpose of ravishing Eliza Ross is purely a matter of speculation and without proof. Instead of to rape why not infer, as we are indulging in presumptions without evidence, that which is more favorable to the defendant; for all presumptions are in his favor. Why not, then, presume that, if both or either of the young ladies were involved within his purpose when he entered the house, that his object was not to ravish but to have carnal knowledge of one or the other with her consent? Every act of the defendant, as shown by this record, is more consistent with this presumption than that he intended a rape. But we are not allowed to indulge in these presumptions without proof. The State alleged that he entered the house with the intent to ravish Eliza Ross. For this the defendant has been convicted. To sustain this conviction the burden was on the State to prove beyond a reasonable doubt, not only the entry of the house, but that the defendant entered the same with the intent to ravish Eliza Ross. But it may be asked that if defendant did not enter the house with this intent, then with what intent did he enter? This is very clearly, yea evidently, begging the question.

As before observed, to enter a house at night by force, without the consent of the owner or occupant, is not a felony. The entry must be for the purpose of committing a felony or theft, and the State must show beyond a reasonable doubt just what the purpose of the entry of the house was,—that it was for the purpose of committing the very offense charged in the indictment. This is the State's burden, and it is not for the defendant to show his purpose, nor can we without facts presume the object of the defendant in entering the house. We must have facts of such a nature or character as to show the defendant's intention beyond a reasonable doubt. This is not a matter of speculation, but of stern proof.

We are of the opinion that the evidence does not support the verdict, and that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered April 29, 1885.]